**DIAMOND HEADS, LLC,**

        **Plaintiff,**

**v.**                                **Case No: 8:07-cv-462-T-33TBM**

**SUSAN EVERINGHAM a/k/a
SUSAN POSNER, an individual,**

        **Defendant.**

_____/

## REPORT AND RECOMMENDATION

      THIS MATTER is before the court for a Report and Recommendation on **Plaintiff's Motion For Summary Judgment with Respect to Count I of the Complaint and Defendant's First and Third Affirmative Defenses** (Doc. 68)[1] and Defendant's response in opposition with exhibits. (Doc. 82).[2] In short, Plaintiff argues that it is entitled to summary judgment on its claim for infringement of claims 1-14 of its U.S. Patent 6,626,134 and as to Design Patent D500,768, as well as on Defendant's remaining affirmative defenses, the first affirmative defense of patent invalidity and the third affirmative defense of patent misuse. Oral arguments were taken February 25, 2009.

---

[1]Plaintiff has filed a unilateral statement of undisputed material facts (Doc. 69) and certain declarations with exhibits in support of its motion (Docs. 70-73).

[2]In the face of objections and arguments by Plaintiff's counsel at the hearing on this motion that Defendant had not proffered any competent evidence in contemplation of Rule 56, Defendant requested and was afforded the opportunity subsequent to the arguments to proffer available evidence in support of her defenses. *See* (Doc. 100). She failed to do so by the stated deadline. Her recent request to reconsider the order to allow for filing has been denied as wholly untimely. *See* (Doc. 105).

I.

Plaintiff is a family-owned Las Vegas, Nevada business that provides customization of motorcycle engines. It claims that its custom parts and customization services are especially popular because they integrate function and aesthetics. In particular, it claims to offer a unique and patented technique known as "diamond cutting" for engraving motorcycle engine parts. Keith Brinton ("Brinton") is the owner of Plaintiff Diamond Heads, LLC and the named inventor of the U.S. Patent 6,626,134 ("the '134 Patent") entitled "Engine Cooling System and Method for Making Same" which describes this technique. The patent, which was assigned to Plaintiff, purports to cover engine components and methods of producing an irregular diamond-cut surface on motorcycle engine heads and cylinders. Diamond-cutting refers to a method or process of cutting "facets" or "intagliations" into the heads and cylinders of a motorcycle engine resulting in a "footballesque" shape that, Plaintiff contends, improves the cooling effect of the engine cooling fins and also adds a unique brilliant shine to the edge of the fins giving the appearance of a diamond-like reflection. *See* (Docs. 1, 72).

A former jeweler, Brinton claims he discovered the "diamond-cutting" technique in 1999 by experimenting on his own motorcycle with a diamond-cutting tool more commonly used in jewelry. (Doc. 72). He was searching for a way to enhance the appearance of the fins on his motorcycle heads and cylinder without the time-consuming polishing that he would normally do. *Id.* In addition, to his surprise, the diamond cutting technique resulted in an increased cooling effect on the motorcycle engine, which Brinton states was confirmed by testing done by scientists at the University of Nevada Las Vegas. *Id.*

In addition to the '134 Patent, Plaintiff alleges that it is the owner of two Design

Patents– D500,768 ("the '768 Design Patent") and D499,742 ("the '742 Design Patent").[3]

(Doc. 1).

Defendant Susan Posner is a sole proprietor of a motorcycle customization business

featuring painting and metal engraving services for motorcycles and accessories. (Doc. 70-2

at 6-7).

In this action for patent infringement pursuant to 35 U.S.C. § 271, Plaintiff alleges

that Defendant makes and sells "diamond cut heads and cylinders" that infringe the '134

Patent and the '768 Design Patent. (Doc. 1). In response, Defendant filed an Amended

Answer and Counterclaim[4] in which she denied the allegations of infringement and asserted

three affirmative defenses.[5] (Doc. 25). As discussed below, Defendant has now conceded

infringement of the '134 Patent. Thus, all that remains at issue are Defendant's claim that the

invention is invalid under 35 U.S.C. §§ 101 (lack of utility) and 103 (obviousness)[6] and her

---

[3]At the hearing on Plaintiff's Motion for Summary Judgment, Plaintiff's counsel withdrew any claims regarding the '742 Design Patent.

[4]Defendant's Counterclaim sued Diamond Heads, LLC and its founder, Brinton, for violation of Federal Antitrust Laws, violation of Florida's Antitrust Act, tortious interference with business relationships, and intentional infliction of emotional distress. (Doc. 25 at 12-31). Pursuant to the parties' joint stipulation, Defendant's counterclaim was dismissed. *See* (Docs. 61 at 2; 65).

[5]The second affirmative defense alleging "inequitable conduct" and unenforceability was dismissed by stipulation. *See* (Docs. 61 at 2, 65).

[6]Although Defendant pleaded the defense of "anticipation" under section102 and "indefiniteness" under section 112, she waived any arguments on the matter of anticipation at the hearing and she has not supported her claim of indefiniteness at all. These defenses are not addressed further herein.

claim of "patent misuse" by reason of Plaintiff's alleged wrongful procurement and use of the '134 Patent to expand the scope of the claims covered by the Patent in an effort to achieve an illegal monopoly. *Id.* at ¶¶ 29, 34-36.

By its motion, Plaintiff seeks summary judgment on its claims of infringement of the '134 Patent and the '768 Design Patent and the remaining first and third affirmative defenses. Plaintiff argues that no material questions of fact exist and it is entitled to judgment as a matter of law, particularly where, as here, the Defendant has failed to come forward with any admissible evidence to support her defenses or oppose Plaintiff's motion. On the matter of Defendant's infringement, it notes that Defendant has admitted in her responses to requests for admissions that she has practiced and thereby infringed all 14 claims of the '134 patent,[7] and thus summary judgment is appropriate on this claim. In short, on the affirmative defenses of obviousness, lack of utility, and misuse of patent, Plaintiff urges that Defendant has failed to proffer any evidence to support these defenses.

In response, Defendant has submitted a few exhibits with her response and argues from an expert report of Rustam Stolkin, Ph.D. More particularly, Defendant claims that the invention of the '134 Patent is invalid because it lacks utility. Citing to Dr. Stolkin's conclusions, she contends that the data submitted to the patent examiners is riddled with errors such that it is unreliable and fails to support any cooling effect of this invention. She claims further that the invention was obvious in light of extant art employed by jewelers and

---

[7]*See* (Doc. 70-2 at 50-63).

those customizing motorcycles. She claims that Plaintiff improperly seeks a monopoly through the combination of the '134 and '768 Patents.

In response, Plaintiff has moved to strike the cited opinions of Dr. Stolkin claiming that he lacks the necessary expertise to offer the opinions on the relevant issues of the case including patent law, cooling, airflow, heat transfer, and combustion engines. (Doc. 62).

II.

In patent cases, the Federal Circuit has explained that its own law is applicable "with respect to issues of substantive patent law and certain procedural issues pertaining to patent law." *Invitrogen Corp. v. Biocrest Mfg., L.P.,* 424 F.3d 1356, 1368 (Fed. Cir. 1999). However, the law of the regional circuit applies to non-patent issues. *Id.* The standard for summary judgment is procedural, and thus, not unique to patent law. Accordingly, a court shall grant summary judgment for the moving party only when "there is no genuine issue as to any material fact and . . . the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The court may look to "the pleadings, the discovery and disclosure materials on file, and any affidavits" in determining whether summary judgment is appropriate. Fed. R. Civ. P. 56(c). The movant bears the exacting burden of demonstrating that there is no dispute as to any material fact in the case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986); *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 918 (11th Cir. 1993).

Once the moving party satisfies its burden, the burden shifts to the non-moving party to establish the existence of a genuine issue of material fact. *Celotex*, 477 U.S. at 324; *Howard v. BP Oil Co.,* 32 F.3d 520, 524 (11th Cir. 1994). The non-movant must designate

specific facts showing a genuine issue for trial beyond mere allegations or the party's

perception. *Perkins v. Sch. Bd. of Pinellas County*, 902 F. Supp. 1503, 1505 (M.D. Fla.

1995). It must set forth, by affidavit or other appropriate means, specific facts showing that

there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(e)(2). Specifically, Rule 56(e)(2)

provides:

> When a motion for summary judgment is properly made and
> supported, an opposing party may not rely merely on
> allegations or denials in its own pleading; rather, its response
> must–by affidavits or as otherwise provided in this rule–set
> out specific facts showing a genuine issue for trial. If the
> opposing party does not so respond, summary judgment
> should, if appropriate, be entered against that party.

Fed. R. Civ. P. 56(e)(2); *see also Holifield v. Reno*, 115 F.3d 1555, 1564 n.6 (11th Cir. 1997)

(conclusory assertions in absence of supporting evidence are insufficient to withstand

summary judgment).

When deciding a motion for summary judgment, "[i]t is not part of the court's

function . . . to decide issues of material fact, but rather determine whether such issues exist to

be tried . . ." and "[t]he court must avoid weighing conflicting evidence or making credibility

determinations." *Hairston*, 9 F.3d at 919 (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S.

242 (1986)). The only determination for the court in a summary judgment proceeding is

whether there exists genuine and material issues of fact to be tried. *Hairston*, 9 F.3d at 921;

*see also Little v. United Techs., Carrier Transicold Div.*, 103 F.3d 956, 959 (11th Cir. 1997).

All the evidence and inferences from the underlying facts must be viewed in the light most

favorable to the nonmoving party. *Combs v. Plantation Patterns*, 106 F.3d 1519, 1526 (11th

Cir. 1997).

6

III.

A.

In pertinent part, 35 U.S.C. § 271(a) provides that "whoever without authority makes, uses, offers to sell or sells any patented invention, within the United States . . . during the term of the patent therefor, infringes the patent."  Courts utilize a two-step analysis to determine if a patent infringement has occurred.  *Cybor Corp. v. FAS Tech., Inc.* 138 F.3d 1448, 1454 (Fed. Cir. 1998) (*en banc*).  The first step is for the court to determine the scope and meaning of the patent claims asserted.  *Id.*  The second step involves a comparison of the properly construed claims to the allegedly infringing device or process.  *Id.*  "To prove infringement, the patentee must show that the accused device meets each claim limitation, either literally or under the doctrine of equivalents."  *Playtex Products, Inc. v. Proctor & Gamble Co.*, 400 F.3d 901, 906 (Fed. Cir. 2005).  The first step, claim construction, is a question of law.  *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979 (Fed. Cir. 1995) (*en banc*), *aff'd* 517 U.S. 370 (1996).  The second step of an infringement analysis, in which the court compares the construed claim to the alleged infringing device, is a question of fact. *Ethican Endo Surgery, Inc. v. U.S. Surgical Corp.* 149 F.3d 1309, 1315  (Fed. Cir. 1998). "As such, it is amenable to summary judgment where, *inter alia*, no reasonable fact finder could find infringement."  *Id.*  (citations omitted).

On the preliminary issue of claims construction, such appears unnecessary in the circumstances of this case.  Nor is there a dispute over the second element of infringement.  In support of Plaintiff's motion, it has filed the Defendant's admissions that, in effect, concede she was making the same type engravings on motorcycle engine parts as claimed in the

patents in dispute.  *See* (Doc. 70-2 at 50-63).  Defendant, while debunking the overly complex

and obtuse language in the '134 Patent claims, concedes that her diamond cutting of

ornamental,  "footballesque" shapes on the edges of motor cycle engine cooling fins infringes

these patents.[8]  Thus, to the extent that Plaintiff urges in its motion that the court need not

engage in claims construction, I agree.  Assuming that the patents here at issue are valid and

properly used, there is no dispute that Defendant infringed the patents and Plaintiff would be

entitled to summary judgment.

B

Regarding the affirmative defense of the invalidity of the '134 Patent, a patent is

presumed valid, and the party asserting that a patent is invalid bears the burden of proving

such invalidity.  35 U.S.C. § 282.  Where a defendant fails to establish its defense of invalidity

by "clear and convincing evidence," summary judgment is proper.  *See Transmatic, Inc. v.

Gulton Industries, Inc.*, 53 F.3d 1270, 1275 (Fed. Cir. 1995).  Defendant now urges that the

'134 Patent is invalid on the basis of lack of utility and obviousness, and because of misuse of

the patents.

Section 101 provides:

> Whoever invents or discovers any new and useful process,
> machine, manufacture, or composition of matter, or any new

---

[8]For a discussion of the applicable standard in assessing design patent infringement,
see *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665 (Fed. Cir. 2008) (*en banc*).  As for the
'768 Design Patent, Plaintiff submits summary judgment is proper as Defendant's work is
substantially the same as its own and more to the point, Defendant has failed to raise any
invalidity defenses as to the '768 Patent.  Given Defendant's admissions and absent a valid
defense, Plaintiff is entitled to summary judgment on the claim of infringement of the '768
Design Patent.

and useful improvement thereof, may obtain a patent therefor,
subject to the conditions and requirements of this title.

35 U.S.C. § 101. On the defense of lack of utility pursuant to this section, a defendant must

establish that an invention "is incapable of serving any beneficial end." *Juicy Whip, Inc. v.*

*Orange Bang, Inc.*, 185 F.3d 1364, 1366 (Fed. Cir. 1999). The "threshold of utility is not

high: an invention is 'useful' under section 101 if it is capable of providing some identifiable

benefit." *Id.* "To violate § 101 the claimed device must be totally incapable of achieving a

useful result." *Brooktree Corp. v. Advanced Micro Devices, Inc.*, 977 F.2d 1555, 1571 (Fed.

Cir. 1992).

Here, the claimed utility of the '134 Patent is the increased cooling effect the

engraved "footballesque" designs offer for an engine employing cooling fins, such as on a

motorcycle. Thus, Plaintiff maintains that the "claims of the '134 Patent are directed to a

product and method that results in enhanced heat transfer of an air-cooled engine's cooling

fins. This benefit is clearly asserted by the specification of the '134 Patent and an example of

such is described by the specification including test results that evidence increased heat

transfer." (Doc. 68 at 17). It supports its claim of an increased cooling effect with the

declaration of Dr. Darrell W. Pepper, Ph.D., a professor of mechanical engineering at the

University of Nevada who supervised the original testing. He opines that the invention in the

'134 Patent offers a degree of improvement in cooling effect. *See* (Doc. 71). Plaintiff argues

that Defendant has done nothing to disprove the utility of the claims in this patent.

Anticipating Defendant's response, Plaintiff urges that the only testimony of a lack of utility

comes from Defendant's expert, Rustam Stolkin, whose testimony is inadmissible both under

Rule 56(e) and Fed. R. Evid. 702.

In response, Defendant urges that "there is in fact no material cooling effect

whatsoever and that any increase in cooling is the simple result of the increased surface area

of the fins that are engraved." (Doc. 82 at 4). She further argues that any minimal cooling

effect that exists can be attributed to the creation of increased surface area resulting from the

fins being engraved. This concept that an increased surface area results in a greater or quicker

cooling effect is a common phenomenon which Defendant urges renders this invention

"obvious." Because increasing the surface area necessarily results in this increased cooling

effect, Defendant urges the Plaintiff's claim that this footballesque design is the source of the

utility, i.e. the increased cooling, is disingenuous. She urges that *at trial*,[9] her expert will

show that the data submitted to the patent office in support of the invention was flawed and

cannot be relied upon and that the inventor does not know how his invention works nor can he

explain the mechanism or principle by which it functions. *Id.*[10]

---

[9]The court would note that "disclosure under summary judgment must be full and complete." *Chambers and Co. v. Equitable Life Assurance Soc'y*, 224 F.2d 338, 346 (5th Cir 1955) (holding that it will not do for a party to hold back evidence or fail to make disclosure on summary judgment and state that it might bring forward other evidence later that would make a stronger case than what is reflected in the record).

[10]As noted above, Plaintiff filed its **Plaintiff and Counter-Defendants' Motion to Exclude Testimony and Opinions of Rustam Stolkin Which Fail to Satisfy the Federal Rules of Evidence** (Doc. 62). By its motion, Plaintiff argues that Dr. Stolkin cannot qualify as an expert on patent law, cooling, airflow, heat transfer or combustion engines and should be disqualified from testifying in any of these areas pursuant to Fed. R. Evid. 702. It urges that his testimony concerning errors in the patent data will not assist the jury nor will his opinion that the errors were intentional, and in any event, he is unqualified to opine on the significance of such errors on the patentability of the invention. By Defendant's response

That the inventor does not know how his invention works and he cannot explain the mechanism by which it operates is of no real consequence. More significant to Plaintiff's motion is Defendant's claim that her expert can testify on the matter of utility of this invention. By Defendant's argument, the testimony of Dr. Stolkin calls into question the reliability of certain tests and results obtained by Plaintiff's expert on the matter of the cooling effect of this invention which results were used before the U.S. Patent Office. The witness's findings undermine the utility of the invention and thus the validity of the '134 Patent. Beyond the potential testimony of Dr. Stolkin, Defendant argues that the fact that the '768 Design Patent which employs the same footballesque shapes as the '134 Patent– yet disclaims any utility– also calls into question the lack of utility of the '134 Patent.

At arguments, Plaintiff objected that none of the testimony of Dr. Stolkin was admissible on this motion for failure of Defendant to comply with Rule 56, and thus the

---

(Doc. 76), Dr. Stolkin is qualified to render opinions on the data and measurements created by Plaintiff's expert and that the same are inaccurate and unreliable and fail to support that the invention offers the claimed cooling effect.

By my review, Dr. Stolkin, who has a Ph.D., in instrumentation and a masters in mechanical engineering, is fully qualified by training and experience to testify about the scientific method, the testing and measurements reflected in the patent data, and the flaws in this patent data reported by Plaintiff's expert, Dr. Pepper. Additionally, he is qualified to opine that the data does not support the claimed cooling effect. However, because Dr. Stolkin has no expertise in the science of cooling or heat transfer in combustion engines, and he has not done any testing of his own, and because he has little or no training or experience in patent law or practice, he is unqualified to render an opinion on the validity of the '134 Patent whether by reason of a lack of utility or obviousness of the invention. Thus, the motion (Doc. 62) is appropriately **denied** insofar as it seeks to wholly exclude Mr. Stolkin's testimony at trial, but **granted** to the extent that the witness may not offer conclusions related to the validity of the patent. Should it be necessary, the undersigned will specifically address the appropriate redactions from the witness's report/testimony for final consideration by the trial judge.

11

defense of lack of utility was wholly unsupported. I think that this is partially correct. Dr. Stolkin's unsigned and unsworn report is inadmissible for consideration on this motion under Fed. R. Civ. P. 56(e). Although Rule 56(c) contemplates the court's consideration of "disclosure materials on file" and a copy of Dr. Stolkin's expert report was filed by Plaintiff (Doc. 63-2), the report is neither signed nor sworn to by the witness and thus it does not comply with the disclosure requirements of Rule 26(a)(2), which at a minimum require the report be signed.[11] However, Plaintiff has filed in the record excerpts from Dr. Stolkin's deposition. *See* (Doc. 63-3). While the proffered portions do not provide further authentication of the report itself, the deposition excerpts reflect Dr. Stolkin's opinion that the patent data contained "gross" or "massive" errors. In the witness's opinion, "the data

---

[11]In *Gell v. Town of Aulander*, 252 F.R.D. 297, 301 (E.D. N.C. Sept. 12, 2008), a case in which the current version of Rule 56(c) was applied, that court held that an unsigned draft affidavit which is offered to prove the matter asserted is inadmissible hearsay which a court may not consider by a party opposing summary judgment. The recent amendments to Rule 56, which were effective December 1, 2007, included, in pertinent part, a change in the language of Fed. R. Civ. P. 56(c). However, the Advisory Committee Notes regarding the 2007 Amendments to Rule 56 indicate that these changes are intended to be stylistic only. In light of the comments regarding the amendment and in view of the long history in federal case law which supports the proposition that unsworn statements are insufficient to support or oppose a Rule 56 motion, I decline to consider Dr. Stolkin's report as a "disclosure material on file" particularly here where it is unsigned, unsworn, and undated. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 158 n. 17 (1970) (an unsworn statement "does not meet the requirements of Fed. R. Civ. P. 56(e)" for purposes of summary judgment); *Carr v. Tatangelo*, 338 F.3d 1259, 1273 n. 26 (11th Cir. 2003) (preliminary unsworn expert's report was properly not considered by district judge in ruling on summary judgment motions); *Maytag Corp. v. Electrolux Home Products, Inc.*, 448 F. Supp. 2d 1034, 1064 (N.D. Iowa 2006) (in this patent infringement case, court held that an unsworn expert report may only be considered by the court on summary judgment with authentication or verification of the report by affidavit or deposition testimony); *Bruno v. Toyotomi, Inc.*, 203 F.R.D. 77, 79 (N.D. N.Y. 2001) (plaintiff's expert report which was unsigned and unsworn did not constitute sufficient evidentiary proof to defeat summary judgment).

presented in the patent document '134 does not in any way support the alleged cooling effect." *Id*. at 28.  But the witness also conceded that "[i]t's commonly understood that engraving to increase the surface area of a hot object can make it cool faster. . . .  I believe in certain cases, certain engraved patterns or changes to surface geometry have been shown to change the turbulent qualities of the fluid flowing past them and that this can result in a cooling effect, but I have not studied those in detail."  *Id*. at 29.  In his view, there was no data in the patent that supported increased cooling in the fins as claimed.  *Id.* at 30.  The witness conceded that he did not know whether the patent examiner considered utility other than the claimed cooling effect of this invention.  *Id.* at 33.  In sum, the competent evidence before the court on this motion raises doubts as to the reliability of the tests and results relied upon by the Plaintiff before the patent office.  Beyond that doubt, Defendant has no evidence of her own to disprove any cooling effect claimed by this invention.

By my consideration, the Defendant has failed to raise a question of fact on her claim of a lack of utility in the '134 Patent sufficient to overcome the presumptive validity of the patent.  As noted above, Dr. Stolkin is unqualified to render an opinion on the validity of the '134 Patent.  At best, the witness opines that certain of the patent data was inaccurate and therefore unreliable to support the claim of a cooling utility.  However, that alone is insufficient to disprove a cooling utility (or any other utility that may have been found by the patent examiner).  While the Defendant has thus raised doubts about certain of the patent data, she proffers no evidence of her own to disprove the claimed cooling effect of Brinton's

invention.[12]  Her only other argument against utility is that the '768 Design Patent employing the same "footballesque" shapes disclaims any utility.   Given the lack of competent evidence and the presumption that the patent is valid, Plaintiff is entitled to summary judgment on the claim of lack of utility.

For similar reasons, the court should grant Plaintiff's motion on the defense of patent misuse as well.  "The doctrine of patent misuse is an affirmative defense to a suit for patent infringement and requires that the alleged infringer show that the patentee has impermissibly broadened the 'physical or temporal scope' of the patent grant with anticompetitive effect." *Windsurfing International, Inc. v. AMF, Inc.*, 782 F.2d 995, 1001 (Fed. Cir.1986) (citations omitted).  Thus, the defense of patent misuse refers to the use of patent rights to obtain an unfair commercial advantage.  "Patent misuse occurs where the patent owner attempts to extend the impact of his patent beyond its proper scope." *Mactec, Inc. v. Gorelick*, 427 F.3d 821, 831, n.4 (10th Cir. 2005) (quoting John Gladstone Mills, *Patent Law Basics* § 12:8 (2004)).  Anticompetitive effects are a critical element of any patent misuse case that is evaluated under this "rule of reason" approach. *County Materials Corp. v. Allan*, 502 F.3d 730, 736 (7th Cir. 2007) (citing *Windsurfing*).  "[A]t the summary judgment stage, some

---

[12]On the other hand, her own argument and that of her expert appear to concede a minimal cooling effect.  Dr. Stolkin's recognition of the general principle that at least minimal cooling enhancement is derived when the surface area of a metal cooling surface is increased and his recognition that engraving of metal surfaces which alters the geometry of the surface area and changes the turbulent qualities of the fluid flowing past the hot metal can also have a cooling effect, would appear to support the claim of utility, which as set forth above, requires only a minimal showing.  Defendant herself argues in her response that the minimal cooling effect resulting from this invention is simply a product of a recognized general principle.  By her account, this renders the invention "obvious."  While this is arguably so, the argument appears to me to concede the utility in the invention.

evidence tending to show an adverse effect in an economically sound relevant market is essential for any claim governed by the rule of reason." *Id.*

Here, Defendant *argues* that the '134 Patent is directed to control the use of a long existing jewelers' tool, that is, a rotary flywheel diamond cutting bit, to secure control over the lucrative market for making ornamental cuts on motorcycle engines with such devices. When coupled with the '768 Design Patent for the same "footballesque" shapes engraved into the edges of the cooling fins, Plaintiff has effectively closed out the market to those who would employ such rotary flywheel bits to engrave motorcycle engines. Plaintiff maintains that apart from Brinton's testimony that the '134 Patent covered engravings of *all* parts of the motorcycle, Defendant has no evidence that Plaintiff ever tried to enforce the patent against anyone who was engraving non-engine parts of a motorcycle.

Beyond argument, Defendant offers no evidence of broad anticompetitive effect on the relevant market nor any proof that Plaintiff has broadened the physical or temporal scope of the patent grant to works beyond engine cooling fins with an anticompetitive effect. *Windsurfing*, 782 F.2d at 1001. While Brinton appears incorrect as to the scope of the '134 patent, his comment is not sufficient to raise a question of fact as to misuse in the complete absence of other evidence from Defendant.[13] Here again, Defendant fails to properly raise an issue of fact on this defense and Plaintiff's motion for summary judgment as to this defense is appropriately granted.

---

[13]Interestingly, an excerpt from Defendant's deposition proffered by Plaintiff reflects her opinion that Plaintiff does not have a monopoly on metal engraving on motorcycles and that numerous people engrave motorcycles. *See* (Doc. 70-2 at 29-32).

On her defense of invalidity under 35 U.S.C. §103 due to obviousness, Defendant argues that a combination of existing skills and known art made it inevitable and obvious that ornamental engraving would extend to the ornamentation of cooling fins of motorcycle engines by those skilled in the art. This argument (indeed all her arguments) are premised on her belief that these "footballesque" cuts were made by Brinton on the edges of cooling fins for aesthetic purposes only and that his later claim of a cooling utility was trumped up by patent counsel and supported by bad science solely to allow him a patent in this lucrative area of customization. She maintains that to the extent that these shapes offer any enhanced cooling, it is simply the product of the known phenomenon that a larger surface area enhances cooling. For these reasons, the "invention" as such was obvious. Unfortunately for Defendant, neither her premise nor her arguments are supported by any competent evidence in response to the instant motion.

Section 103 provides, in pertinent part,

> A patent may not be obtained though the invention is not
> identically disclosed or described as set forth in section 102
> of this title, if the differences between the subject matter
> sought to be patented and the prior art are such that the
> subject matter as a whole would have been obvious at the
> time the invention was made to a person having ordinary
> skill in the art to which said subject matter pertains.

35 U.S.C. § 103.

By its motion, Plaintiff argues that Defendant cannot establish a prima facie case for obviousness under section 103. Urging the teaching, suggestion, or motivation test ("TSM test") adopted by the Federal Circuit as the appropriate standard by which to measure obviousness, Plaintiff argues that Defendant has no proof of prior art, or anything else that

teaches and suggests the elements of the claims of the '134 Patent. Here, Defendant has not

and cannot prove that the engraving of the *edges* of the engine cooling fins was ever

demonstrated in prior art or that such engraving was done anywhere else on motorcycles in

prior art.[14] Nor can Defendant prove up a motivation or reason to use the elements of any

prior art in the manner claimed by the patent. While acknowledging that the Supreme Court

in *KSR Int'l Co. v. Teleflex Inc.*, 127 S.Ct. 1727 (2007), found the rigid TSM test

inappropriate to the determination of obviousness, Plaintiff nonetheless urges that "a flexible

TSM test remains the primary guarantor against a non-statutory hindsight analysis." *See*

*Ortho-McNeil Pharmaceutical, Inc. v. Mylan Labs., Inc.,* 520 F.3d 1358, 1364 (Fed. Cir.

2008) (citing *In re Translogic Tech., Inc.,* 504 F.3d 1249, 1257 (Fed. Cir.2007)).

In factual support of its position that the invention is not obvious, Plaintiff proffers

its expert, David Perewitz, who opines that while engine modifications on motorcycles have

been present for many years, including cut fins, until Brinton's invention, he had never seen

the type engravings claimed in the '134 Patent. In his view, the prior art cited by the

Defendant which included filing and milling of the engine's cooling fins would not render the

'134 Patent invalid. *See* (Doc. 73). Noting again that Defendant has failed to support her

argument with competent evidence on this motion, Plaintiff urges that she has not and cannot

---

[14]Plaintiff argues that at best, Defendant may have evidence that etching jewelry with a
rotary flywheel bit has long been known in the jewelry industry and that the cutting of engine
fins was known prior to Plaintiff's invention, although not along fin edges and not of the type
here at issue. It agrees that the thermodynamic principles of heat transfer at issue here were
also well known. It urges that the prior art produced by Defendant in discovery reveals
nothing helpful to her argument.

make out a prima facie case of obviousness even under the more flexible standard called for by *KSR*.

Proffered evidence by Plaintiff establishes that Defendant is a person skilled in the art of engraving with a rotary cutting bit and that she has customized motorcycles for over twenty years. Since 2002, she has done the same type engraving claimed in the '134 patent. Brinton himself testifies that he, as a jeweler, knew the rotary flywheel cutting bit could be used to create a pleasing visual effect. From this, Defendant claims sufficient proof that Brinton's use of the same to add ornamentation to his motorcycle was an obvious and predictable variation of the existing knowledge and works.[15] Beyond this, she claims that she will show *at trial*, through her own testimony and that of jewelers and motorcycle enthusiasts that she and others have long used cutting tools and made structures and shapes on motorcycles that make obvious the invention claimed in the '134 Patent.

The Supreme Court holds that "[t]he ultimate judgment of obviousness is a legal determination" and summary judgment may be appropriate if "the content of the prior art, the scope of the patent claim, and the level of ordinary skill in the art are not in material dispute, and the obviousness of the claim is apparent in light of these factors." *KSR Int'l Co. v. Teleflex Inc.*, 127 S.Ct. at 1745-46 (2007) (citing *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17 (1966)). Courts may also consider secondary factors, including "'commercial success, long felt but unsolved needs, and failure of others'" to illuminate the circumstances giving rise to the origin of the patented matter. *Id*. at 1734 (quoting *Graham*, 383 U.S. at 17-18).

---

[15]*See* Brinton's Declaration, (Doc. 72) and deposition excerpts (Doc. 82, Exh. B).

In *KSR*, the Supreme Court rejected a rigid application of the Federal Circuit's "teaching, suggestion, or motivation" test. 127 S. Ct. at 1734 (citing *Al-Site Corp. v. VSI Int'l, Inc.*, 174 F.3d 1308, 1323-24 (Fed. Cir.1999) as an example of this test). Under this test, proof of obviousness required some teaching, suggestion, or motivation "found in the prior art, the nature of the problem, or the knowledge of a person having ordinary skill in the art." *Id.* The Court determined that while "teaching, suggestion, or motivation" had "captured a helpful insight" into obviousness, it was incompatible with Supreme Court precedent when applied in a rigid and mandatory fashion. *Id.* at 1741. When determining obviousness, "neither the particular motivation nor the avowed purpose of the patentee controls." *Id.* at 1741-42. Instead, courts should consider whether the "objective reach of the claim" encompasses obvious subject matter, and if the court determines that it does, the patent is invalid under § 103. *Id.* at 1742. "Obviousness" must not be measured in terms of what would be obvious to a lay person, but rather what would be obvious to one skilled in the applicable art. *Dann v. Johnston*, 425 U.S. 219, 228 (1976). Further, "[w]hen a work is available in one field of endeavor, design incentives and other market forces can prompt variations of it, either in the same field or a different one" such that "if a person of ordinary skill can implement a predictable variation, § 103 likely bars its patentability." 127 S. Ct. at 1740.

Defendant has proffered no prior art and little else to the court to assist her argument on this motion.[16] Thus, while Defendant appears able to offer some evidence in support of her

---

[16]Her response includes certain exhibits purporting to show rotary flywheel cutting bits from a catalogue, excerpts from Brinton's deposition, the Notice of Allowance for the '134

argument regarding prior art, she has failed to submit such matters for the court's consideration in accordance with Rule 56(e). As a consequence, on the record before the court, Plaintiff has evidence of the lack of prior art reflecting on Brinton's invention and Defendant has nothing to refute that testimony. On the other hand, Defendant can here claim that it is undisputed that jewelers have long used rotary diamond cutting bits to achieve a pleasing affect on jewelry and that others have long sought to customize their motorcycles by making ornamental cuts on motorcycle engines even before Brinton's work, although no one had combined the art to engrave the edges of engine cooling fins in the manner Brinton did. Upon my consideration, if the claims of the '134 Patent reached only the application and method for applying the ornamentation of engine parts, then even on this limited showing Defendant might survive on her claim that this was just an obvious extension of the jewelers' art obvious to one skilled in the art of customization of motorcycles. But here, the claims reach an enhanced cooling effect by such ornamentation as well. For this reason, I must conclude that Defendant has not demonstrated by competent evidence any prior art rendering the whole of the claimed invention obvious.

---

Patent from the U.S. Patent Office, and drawings from the '768 Design Patent and the '134 Patent illustrating the engraved edges of the cooling fins. (Doc. 82).

Plaintiff has proffered portions of Defendant's deposition. *See* (Doc. 70-2). The proffered excerpts hardly assist her claim. She testified that she first saw Brinton's work at Daytona Bike Week in March 2000. Although she had seen cut fins before that, she had never seen such engraving cuts before. Subsequently, she had her own motorcycle engines done by Brinton in hopes of becoming a dealer for him. She began cutting engines like Brinton did on her own after Bike Week in 2002. As of the time of her deposition, she had not found printed evidence (prior art) that showed diamond cutting of the type done by Brinton. While Defendant identified several people she knew whom she believed could testify to prior art similar to Brinton's work, no competent evidence of such has been proffered.

In sum, Defendant has failed to raise a question of fact on her claim of obviousness on this motion. Plaintiff is entitled to summary judgment on this defense as well.

IV.

Accordingly, I recommend that Plaintiff's Motion For Summary Judgment with Respect to Count I of the Complaint [as to the '134 Patent and the '768 Design Patent] and Defendant's First and Third Affirmative Defenses (Doc. 68) be **GRANTED**. As for relief, the Defendant and her agents and employees, if any, are appropriately enjoined from making, using, selling, and offering for sale engine cooling fin structures having irregular and intangliated edge surfaces as claimed by these patents. All marketing or advertising material in the possession, custody or control of the Defendant and her agents and employees, if any, in whatever medium, intended to induce others to make, use, sell, or offer to sell the same structures should be ordered withdrawn and destroyed. To the extent that Plaintiff seeks damages, Defendant should provide an accounting to Plaintiff to permit the determination of a reasonable royalty for her use of the invention. I find no basis to suggest it is appropriate to award treble damages in the circumstances of this case nor do I find this such an exceptional case to merit an award of legal fees and accordingly, such is not recommended.

Respectfully submitted on this
31st day of March 2009.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

21

**NOTICE TO PARTIES**

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal and a *de novo* determination by a district judge. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; M.D. Fla. R. 6.02; *see also* Fed. R. Civ. P. 6; M.D. Fla. R. 4.20.


Copies to:
The Honorable Virginia M. Hernandez Covington
Counsel of Record