UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

**DIAMOND HEADS, LLC,**

    **Plaintiff,**

v.                              **Case No. 8:07-cv-462-T-33TBM**

**SUSAN EVERINGHAM a/k/a
SUSAN POSNER,**

    **Defendant.**
_____/

## REPORT AND RECOMMENDATION

THIS MATTER is before the court on referral from the Honorable Virginia M. Hernandez Covington on Plaintiff's **Motion for Order Compelling Defendant to Show Cause Why Defendant Should Not Be Held in Contempt for Violating Permanent Injunction** (Doc. 120) and Plaintiff's response in opposition (Doc. 124).[1]  A hearing on the motion was conducted January 14, 2011.

I.

A.

By way of pertinent procedural history, on April 20, 2009, the court granted final summary judgment in favor of Plaintiff, Diamond Heads LLC ("Diamond Heads") and against Defendant, Susan Posner ("Posner"), on its claims in Count I that Posner infringed Diamond

---

[1] Additionally, Plaintiff submitted the Declarations of H. Dickson Burton, Esquire, and Mr. Keith A. Brinton, (Docs. 121, 122) in support of its motion, to which Defendant filed responses (Docs. 125, 126).

Heads' patents.² (Doc. 107). The court's Order directed Defendant to provide an accounting, and enjoined "Defendant and her agents . . . from making, using, selling, or offering to sell engine cooling fin structures having irregular or intagliated edge surface as claimed by United States Patent 6,626,134 and United States Design Patent D500768." *Id.* at 3. Defendant was further ordered to "destroy all cooling fin structures having irregular or intagliated surfaces which are currently in Defendant's possession, custody or control; and to withdraw and destroy all marketing or advertising material in the possession, custody or control of the Defendant . . . in whatever medium, intended to induce others to make, use, sell, or offer to sell the same structures." *Id.* at 3-4. Thereafter, the parties filed a joint motion for entry of a Final Judgment and Permanent Injunction.³ (Doc. 117). On September 11, 2009, the court granted the joint motion and issued a Final Judgment and Permanent Injunction (Doc. 118) which provided in pertinent part that:

> [T]he Defendant and her officers, agents, servants, employees, representatives and those in active concert or participation with Defendant, ARE HEREBY PERMANENTLY ENJOINED and shall not either directly, indirectly, or in any way manufacture, sell, offer to sell, use or import within the United States any cut or

---

²The patents at issue which are owned by Diamond Heads are U.S. Patent 6,626,134, entitled "Engine Cooling System and Method for Making Same" and U.S. Design Patent D499,742. The '134 patent purports to cover engine components and methods of producing an irregular diamond-cut surface on motorcycle engine heads and cylinders. Diamond cutting refers to a method or process of cutting "facets" or "intagliations" into the heads and cylinders of a motorcycle engine resulting in a "footballesque" shape that purports to improve the cooling effect of the engine cooling fins and also adds a unique brilliant shine to the edge of the fins giving the appearance of a diamond-like reflection. *See* (Docs. 1, 72).

³In a contempt proceeding for alleged violation of a court's order entered pursuant to a consent decree enjoining further infringement of the patent, the validity of the patent claims are not at issue. *See U.S. ex rel. Shell Oil Co. v. Barco Corp.*, 430 F.2d 998 (8th Cir. 1970); *Siebring v. Hansen*, 346 F.2d 474 (8th Cir. 1965).

> engraved heads, cylinders or other engine components, including motorcycle engine components, which infringe the patents-at-issue (. . . which are sometimes referred to as "diamond cut" heads or cylinders or engine components), until such time as the patents-at-issue expire. Prohibited activities shall include advertising, promoting or displaying heads, cylinders or other engine components which have been cut or engraved . . . on any Internet website, whether or not as part of a photograph of a motorcycle including such heads, cylinders or other engine components, and/or referencing diamond cutting or diamond cutting of motorcycle engines, heads or cylinders, whether in regular text or metatags on any website or printed publication. Defendant is further prohibited from assisting any third-party with the manufacture, sale, offer for sale, use or import within the United States of any heads, cylinders or other engine components which have been "diamond cut" or otherwise cut or engraved in a manner . . . which otherwise infringes the patents-at issue.

*Id.*, ¶8.[4] The Order further provided that upon a finding that the Defendant violated the Consent Judgment that Defendant shall be found in contempt of Court and the Court shall award reasonable attorneys' fees and costs to Plaintiff along with a penalty, payable to the Plaintiff, in an amount set by the Court, but not less than $10,000. *Id.*, ¶12.

The Defendant filed a voluntary Chapter 7 bankruptcy on October 5, 2009. The case was converted to Chapter 13 on March 9, 2010, and re-converted to Chapter 7 on July 29, 2010. On January 20, 2010, the Bankruptcy Court granted Diamond Heads relief from the stay to permit it to file a motion in this action in order to enforce the previously entered injunction. *See* U.S. Bankruptcy Court, M.D. Fla., Case No. 8:09-bk-22581.

B.

By the instant motion, Plaintiff seeks an order holding Defendant, Susan Posner, in contempt of the injunction entered by the Court. Specifically, Plaintiff contends that Defendant has violated the same by her continued making, using, selling, and offering to sell

---

[4] The injunctions set forth in the court's Orders (Docs. 107, 118) shall hereinafter collectively be referred to as the injunction.

diamond cut or engraved engine structures; continued display of diamond cut push rods and engines components on her website and at motorcycle rallies or shows and at motorcycle dealerships; and continued advertising and promotion of diamond cutting services.

In support of the motion, Plaintiff proffers the declaration of Mr. Keith A. Brinton ("Brinton"), owner of Diamond Heads, who has reviewed Defendant's websites which displayed, at least until March 2010, photographs of motorcycles with offending diamond cut engine components.[5] Further, in October 2009, Brinton attended a "H.O.G." Rally in St. Augustine, Florida, where Defendant was displaying a motorcycle with diamond cut engine components at a booth. According to Brinton, when he inquired at the dealership who was cutting the heads and cylinders it was displaying, he was informed Defendant was. Brinton also proffers a brochure he obtained indicating that Defendant would be diamond cutting motorcycle parts at Carl's Speed Shop in Daytona Beach on October 15-18. *See* (Doc. 122). Brinton's declaration is accompanied by copies of the allegedly offending matters and a photocopy of the brochure. *See* (Doc. 122-1, 2, and 3). He claims also that in October 2009, he received an unsolicited phone call from Jesse Dobson who advised that Defendant was continuing to diamond cut engine components.

In further support, Plaintiff offers the declaration of its counsel, H. Dickson Burton, Esquire, who asserts that Defendant has continued to solicit and provide her diamond cutting services in violation of the court's Orders and further attaches a declaration from a private

---

[5]According to Brinton, Defendant maintained websites at www.susansairbrush.com and www.susansairbrush.net. The websites purportedly advertise Defendant's motorcycle customization services.

investigator who claims Defendant offered him diamond cutting services for his engine parts in August 2009. (Doc. 121, 121-8). The Burton declaration is accompanied by several statements by Jesse Dobson, a friend of Defendant. In the early statements, Dobson advised counsel that Defendant had continued to engage in diamond cutting after the injunction. (Doc. 121-2, 3). In a later statement, he retracted those comments. (Doc. 121-5). Included with counsel's declaration are invoices and deposition excerpts from Defendant related to her billing for work, some of which involved diamond cutting of engine parts by Defendant post-injunction. (Doc. 121-1 and 4).

Plaintiff seeks an order of contempt for violation of the injunction, an order vesting ownership in Defendant's offending motorcycle in Plaintiff or the bankruptcy trustee, another injunction enjoining the promoting or offering of diamond cutting services in violation of the injunction, liquidated damages in the amount of $10,000, and attorney's fees and costs.

In her response, Defendant admitted and denied the various allegations in the motion, and the declarations from Brinton and Attorney Burton. (Docs. 124-26).

## II.

### A.

Courts have the power to enforce compliance with their lawful orders through civil contempt. *See Citronelle-Mobile Gathering, Inc. v. Watkins*, 943 F.2d 1297, 1301 (11th Cir. 1991) (citing *Shillitani v. United States*, 384 U.S. 364, 370 (1966)). Once the party moving for a contempt order makes a prima facie showing that a party subject to a court order has violated the court's orders, the burden shifts to that party to produce evidence explaining his noncompliance. *Citronelle-Mobile*, 943 F.2d at 1301 (citing *United States v. Rylander*, 460

U.S. 752, 755 (1983)). That party must demonstrate an inability to comply with the court's order by showing that he has made "in good faith all reasonable efforts to comply." *Id.* (citing *United States v. Ryan*, 402 U.S. 530, 534 (1971)). Due process requires that the court inform the alleged contemnor of the contemptuous conduct and provide a hearing to allow the contemnor to explain why the court should not make a contempt finding. *Id*. at 1305 (citing *Mercer v. Mitchell*, 908 F.2d 763, 767 (11th Cir. 1990)).

The finding of civil contempt must be based on clear and convincing evidence that a court order was violated. *Jove Eng'g v. I.R.S.*, 92 F.3d 1539, 1545 (11th Cir. 1996). This Circuit has recognized that the "clear and convincing proof must . . . demonstrate that 1) the allegedly violated order was valid and lawful; 2) the order was clear, definite and unambiguous; and 3) the alleged violator had the ability to comply with the order." *Jordan v. Wilson*, 851 F.2d 1290, 1292, n.2 (11th Cir. 1988) (citing *United States v. Koblitz*, 803 F.2d 1523, 1527 (11th Cir. 1986)).

B.

Upon evidence adduced at the evidentiary hearing and in accordance with 28 U.S.C. § 636(e)(6)(B), I hereby certify the following facts in support of the conclusion that Defendant has advertised, promoted, and displayed heads, cylinders or other motorcycle engine components at motorcycle rallies and on her website in violation of the injunction. Defendant and her counsel concede as much although they claim such was not done in wilful violation of the court's Orders. Thus, at the hearing, counsel for the Defendant admitted that Defendant's website "inartfully displayed past work" in a manner which violated the injunction. Counsel acknowledged that her website promoting her services contained photographs of motorcycle

6

engine parts which had been diamond cut and were violative of the injunction. Defendant herself admitted in her response to Plaintiff's motion that her motorcycle was displayed with its diamond cut heads, cylinders, and other infringing engine components in front of her booth space during the St. Augustine H.O.G. rally as alleged. (Doc. 124, ¶20). As for whether Defendant has actually diamond cut engine parts in violation of the injunction, there is insufficient evidence in support of the claim on this motion.[6]

The evidence clearly establishes that Defendant continued to promote her services at motorcycle events and on her website displaying her motorcycle in violation of the injunction. Plaintiff's Ex. 3 contains photographs of Defendant's motorcycle clearly revealing diamond cut engine parts. Exhibit 4 contains photographs of her ex-husband's motorcycle which displays offending diamond cut engine parts. Both were employed by Defendant after the injunction to promote her business. Thus, photographs of these motorcycles clearly depicting their diamond cut engine parts appear in Exs. 6 - 8, which are identified as having been copied off of Defendant's websites. While Defendant will not concede that all the photographs in these exhibits were so employed, I am convinced that at least some of these offending photographs have been employed by Defendant on her websites to promote her diamond

---

[6]Defendant testified that after the injunction she began experimenting with different bits and cuts so that she might continue diamond cutting without violating the injunction. She denies that her post-injunction work was the same as that Plaintiff does under the patents. She acknowledged the check stub and invoices in Plaintiff's exhibit 9, at least in part reflect payments for diamond cutting work done on engine parts for Harley dealers, but she claims that she was doing different things so as not to run afoul of the injunction.

It is agreed that not all diamond cutting necessarily infringes the patents and thus violates the injunction. On this motion, Plaintiff offers insufficient evidence that any particular diamond cutting by Defendant post-injunction infringes its patents and violates the injunction.

7

cutting work and that such promotion has continued up to the date of the hearing.  Plaintiff has similarly employed such photographs and her motorcycle itself at motorcycle events since the date of the injunction.  Plaintiff's Ex. 5 is the Official Event Guide for Biketoberfest 2009, a motorcycle event held in Daytona Beach, Florida, October 15th through 18th.  This event guide contains an advertisement for Carl's Speed Shop which states in pertinent part, "[w]atch Miss Susan do diamond cutting of motorcycle parts before your very eyes."  *Id.* at 14.  Brinton attended the event.  He did not find Defendant at Carl's Speed Shop the day he visited, but he claims he was told that the heads and cylinders it had on display were cut by Defendant.  Defendant admits that she attended this rally although she denies doing any diamond cutting.  She claims also to have told the dealer to take down his display because she could not do that work anymore.

Plaintiff's Ex. 10 is from the website for Harley-Davidson of St. Augustine, Florida, promoting the Harley Owners Group or H.O.G. Rally scheduled for later in October 2009.  Included among the advertisements for the event was one of Defendant promoting her etching, airbrush painting, and engraving.  While this alone is of little concern, the ad employs a photograph which depicts an offending diamond cut motor as well.  *Id.* at 3.  Brinton attended this Rally as well.  Plaintiff's Ex. 11 are Brinton's photographs depicting Defendant's booth at the H.O.G. Rally.  On display in front of the booth is Defendant's motorcycle with the diamond cut engine.  Brinton claims again that when he went inside the Harley store he saw diamond cut engines and was told they were cut by Defendant.

Defendant claims the photographs of the motorcycles and her display of the motorcycles were intended to demonstrate only her airbrush painting work and not her

8

diamond cutting. The argument is specious. The evidence clearly reflects that Defendant continues to offer diamond cutting services although she does so on the quiet and only for cash. The very prominence of the diamond cutting in these photographs also lays bare any claim that she is highlighting only her paint work.

Defendant acknowledges that she knew of the injunction and she makes no claim in response to this motion that its terms were unclear, indefinite and/or ambiguous. Neither does she claim she was unable to comply with the court's orders at any time pertinent to this motion.

In further effort to prove that Defendant continues to offer diamond cutting services in violation of the injunction, Plaintiff engaged two private investigators. Their testimony at the hearing was essentially unrefuted. The first, Dale Weeks, testified that on an engagement by Plaintiff in August 2009 he went to Harley-Davidson of Tampa and inquired about diamond cutting services. He was told that the store did not do this work, but he was referred to Defendant and given her telephone number. He called Defendant and advised her he had some cylinders and heads that he wanted diamond cut. Defendant offered to do the work for $400 cash with a $250 deposit up front. The second private investigator, Alex Greiner, similarly testified to her investigation in August 2009. In response to Greiner's inquiries, Defendant offered to do the work that day. However, neither investigator actually followed up and had such work done, and as Plaintiff's counsel concedes, they have no firm evidence of any diamond cutting by Defendant which actually is in violation of the injunction.[7]

---

[7]Plaintiff also claims that Defendant violated the injunction by not destroying her motorcycle. I do not read the injunction to call for that. In any event, in ongoing bankruptcy

In sum, there is clear and convincing evidence that post-injunction, Defendant used her motorcycle (and another's as well) with diamond cut engine parts on her websites and as a display at two motorcycle events to advertise and promote her business, including her diamond cutting services, in violation of the court's Orders. By Brinton's account, Defendant's continued promotion and offer of diamond cutting services has hurt his company's reputation and deprived him of business in the State of Florida because dealers still refer such work to Defendant. The Defendant's conduct in this regard reveals that the violation is wilful. As noted, it is impossible to conclude by clear and convincing evidence that Defendant's post-injunction diamond cutting has violated the injunction, and I do not reach that conclusion on this motion.

Because Defendant has continued to offer and promote her services in a manner which the court prohibited, Plaintiff urges that Defendant should be found in contempt and sanctioned accordingly. To that end, it requests a further order directing that Defendant comply with the injunction by "refraining from promoting, advertising or offering any diamond cutting or engraving services as prohibited by the Permanent Injunction, including by appearing at trade shows, bike rallies or other events, and by allowing third party dealers to display diamond cut or engraved heads which infringe the patents-at-issue, or by posting or

---

proceedings, at present it appears that Defendant surrendered the remaining parts of her motorcycle to the bankruptcy trustee. Defendant claims that her motorcycle and tools were significantly damaged or destroyed in a house fire and what has been surrendered is all that is left. Suffice it to say that Plaintiff doubts Defendant's veracity concerning the destruction of her tools or her motorcycle in the fire. However, it offers insufficient proof on the matter as of yet. Plaintiff is seeking to bar the dischargeability of the debt owed to Plaintiff and this appears a matter better left to the bankruptcy judge.

displaying any and all photographs of diamond cut or engraved heads, cylinders or other engine components, including motorcycle engine components, which infringe the patents at issue" and by ordering her again to destroy her diamond cut heads, cylinders and other infringing components.  Additionally, Plaintiff seeks fees and costs as sanctions and liquidated damages in an amount not less than $10,000. (Doc. 120 at 9).  At arguments, Plaintiff's counsel conceded the apparent impracticality of monetary sanctions given that Defendant is now is in bankruptcy and claims only to work as a waitress.  He urges that the court consider more punitive sanctions given Defendant's demonstrated disrespect for the orders of the court and suggests that she be advised that she is subject to a term of incarceration should she again violate the court's orders.

Defense counsel suggests that the parties could work together to assure any offending artwork is removed from Defendant's websites and that an acceptable archival of her past work could be established to make clear that diamond cutting is not her present work. Defense counsel further suggests Defendant be ordered to cooperate with the bankruptcy court to clarify any issues regarding her tools and motorcycle.

### III.

### A.

Contempt authority is provided to the federal courts under 18 U.S.C. § 401.  In pertinent part, it states:

> A court of the United States shall have power to punish by fine or imprisonment, or both, at its discretion, such contempt of its authority, and none other, as –
> (1) . . .
> (2) . . .

11

> (3) Disobedience or resistance to its lawful writ, process, order, rule, decree, or command.

18 U.S.C. § 401. Such contempt authority is available to federal courts when presented with a party's violation of an injunction in patent cases. *See KSM Fastening Systems, Inc.v. H.A. Jones Co.*, 776 F.2d 1522 (Fed. Cir. 1985). As there stated, "[a] civil contempt proceeding for violation of an injunction issued after patent litigation, while primarily for the benefit of the patent owner, nevertheless, involves also the concept of an affront to the court for failure to obey its order." *Id.* at 1524. In addition to statutory authority, federal courts possess the inherent discretion "to correct willful violations of its solemnly passed orders." *Dow Chem. Co. v. Chem. Cleaning, Inc.*, 434 F.2d 1212, 1214-15 (5th Cir. 1970)[8] (noting that the patent infringement was established in the previous round of litigation and the current contempt proceeding was to determine the appropriateness of damages, compensatory and exemplary, for willful violation of a court order and was not limited by the damages outlined in the provisions of 35 U.S.C. § 284).

With regard to damages, the district court's authority includes "numerous options" to include "a coercive daily fine, a compensatory fine, [attorney's fees and expenses], and coercive incarceration." *See Citronelle-Mobile*, 943 F.2d at 1304 (and cases cited therein). "In establishing the amount to impose, the court must consider several factors, including the character and magnitude of the harm threatened by continued contumacy, the probable effectiveness of any suggested sanction in bringing about compliance, and the amount of the

---

[8]In *Bonner v. City of Prichard, Ala.*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

12

contemnor's financial resources and consequent seriousness of the burden to him." *Matter of Trinity Indus., Inc.*, 876 F.2d 1485, 1493-94 (11th Cir. 1989).

B.

Upon consideration, I recommend that the court affirm the findings of fact herein and make a finding of contempt. As for the appropriate sanctions, I recommend that the Defendant be ordered to serve a period of twenty (20) days' incarceration. I further recommend that the incarceration be suspended on the condition that Defendant, within fourteen (14) days from the date of the Order, delete from her websites and all her other advertising and promotional material any photograph and/or depiction of diamond cut engine parts and any reference, verbal and visual, suggesting in any way that she provides diamond cutting services on engine parts as prohibited by the injunction; and within thirty days (30) days from the date of the Order, that she notify in writing every dealer with whom she has done diamond cutting services of the sort found to have violated Diamond Head's patents in the past, that she is barred by court order from performing such services and that no such referrals for such offending work should be made to her nor will such referrals be accepted by her in the future;[9] and further conditioned on her submission to the bankruptcy trustee within fourteen (14) days from the date of the Order any offending diamond cut engine parts and tools for performing the same still in her possession, custody, and control.

The permanent injunction calls for liquidated damages and the award of fees and costs incurred in proving the contempt and such should be awarded. (Doc. 118 at 4). However,

---

[9] I recommend that the court direct that counsel confer, within seven (7) days from the date of the Order, on the appropriate wording of such notice.

13

such awards would appear rather vain and futile acts given the Defendant's pending bankruptcy.

These recommendations in no way affect Defendant's other artistic work. To the extent that Defendant wishes to promote and provide her etching, engraving, and airbrush painting, she is free to do so, however not by employing photographs or displays depicting the offending diamond cut work which is the subject of the injunction. To the extent that she continues to offer and/or provide diamond cutting services on engine parts, she does so on peril that she will again be before the court on similar allegations of contempt.

IV.

Accordingly, it is recommended that Plaintiff's Motion for Order Compelling Defendant to Show Cause Why Defendant Should Not Be Held in Contempt for Violating Permanent Injunction (Doc. 120) be **granted**; that the court affirm the findings of fact contained herein; make a finding of contempt; and impose sanctions against the Defendant as set forth above.

    Respectfully submitted on this
    28th day of January 2011.

THOMAS B. McCOUN III
UNITED STATES MAGISTRATE JUDGE

## **NOTICE TO PARTIES**

      Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attacking the factual findings on appeal and a *de novo* determination by a district judge.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72; M.D. Fla. R. 6.02; *see also* Fed. R. Civ. P. 6; M.D. Fla. R. 4.20.

Copies to:
Honorable Virginia M. Hernandez Covington, United States District Judge
Counsel of Record